# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1042
_____

United States of America

*Plaintiff - Appellee*

v.

Conrad Sparkman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: December 13, 2021
Filed: January 24, 2022
[Unpublished]
_____

Before SMITH, Chief Judge, GRUENDER and KOBES, Circuit Judges.
_____

PER CURIAM.

Conrad Sparkman pleaded guilty to possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court[1] found that Sparkman fled in his vehicle from police officers who were trying to stop him;

---

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

drove recklessly; and then, while fleeing on foot, fired his weapon at an officer. Sparkman was sentenced to the statutory maximum of 120 months' imprisonment. Sparkman appeals, arguing that the district court erred in assessing a six-level enhancement for assaulting a police officer, a four-level enhancement for possessing a firearm in connection with another felony, and a two-level enhancement for reckless endangerment during flight. Sparkman also argues that the district court should have granted him a three-level reduction for accepting responsibility.

"We review the district court's construction and application of the sentencing guidelines *de novo* and its factual findings for clear error." *United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011). "Clear error exists where, viewing the record as a whole, this court is left with the definite and firm conviction that a mistake has been committed." *United States v. Thurmond*, 914 F.3d 612, 613-14 (8th Cir. 2019) (internal quotation marks omitted).

First, Sparkman challenges the enhancement for assaulting a police officer under U.S.S.G. § 3A1.2(c)(1) and the enhancement for possessing a firearm in connection with another felony under § 2K2.1(b)(6)(B). These enhancements rest on the district court's finding that Sparkman fired his weapon at a police officer, committing the felony of assault in the first degree. *See* Mo. Rev. Stat. § 565.050. The court relied on the testimony of Officer Cameron Jackson, which it found "compelling." Jackson testified that he saw Sparkman remove his gun from his waistband and point it at Jackson, and then Jackson heard a gunshot and saw the muzzle flash. Sparkman argues that Jackson's testimony is undermined by his admissions that an "auditory exclusion kicked in" during the incident and that his perception became "blurry" due to "tunnel vision," which prevented him from remembering all the details. Sparkman also notes that despite thorough searching, no shell casing was found that could be definitively linked to Sparkman's firearm.

The district court did not clearly err in finding, based on Jackson's testimony, that Sparkman fired at Jackson. Both the "auditory exclusion" and the tunnel vision—products of an adrenaline rush during the "first time [Jackson] had ever been

shot at"—occurred "after the initial shooting" when Jackson had already heard a gunshot and seen the muzzle flash. Moreover, Jackson testified that his tunnel vision obscured only his peripheral vision, so that "all [he] could do was focus on Mr. Sparkman." It was thus not clear error to treat Jackson's testimony about the shooting as reliable. *See United States v. Salsberry*, 825 F.3d 499, 501 (8th Cir. 2016) ("[A] district court's assessment of a witness's credibility is almost never clear error given that court's comparative advantage at evaluating credibility.").

Nor does the lack of a shell casing subvert Jackson's testimony because shell casings are small and could have been easily concealed by the thick grass near the shooting. Also, Sparkman's claim that officers "could not find a single shell casing that originated from" Sparkman's firearm goes too far; the officers did recover a shell casing around the scene that did not come from an officer's weapon. Although test results were "inconclusive as to whether or not [the casing was] fired from Defendant's firearm," it could have originated there because it matched one of the shell casings that was found in the magazine of Sparkman's weapon.

In light of this evidence, the district court did not clearly err in finding that Sparkman fired his weapon at Jackson, committing first-degree assault. We therefore affirm the enhancements for assault of a police officer and possession of a firearm in connection with another felony.

Next, Sparkman appeals the two-level enhancement for reckless endangerment during flight. Sparkman contends that this enhancement was granted for obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1, rather than reckless endangerment under § 3C1.2. Although Sparkman does not challenge any factual findings regarding his flight, he claims legal error on the ground that fleeing arrest does not ordinarily count as obstruction of justice. *See United States v. Billingsley*, 160 F.3d 502, 506-07 (8th Cir. 1998). Because Sparkman raises this argument for the first time on appeal, we review for plain error. *See United States v. Lovato*, 868 F.3d 681, 684 (8th Cir. 2017).

The district court's discussion at the sentencing hearing and the Presentence Investigation Report ("PSR") establish that the two-level enhancement was for reckless endangerment during flight, not obstructing or impeding the administration of justice. Although the district court referred to the enhancement as an "adjustment for obstruction of justice," this was not a reference to U.S.S.G. § 3C1.1. Instead, the court borrowed the label that the PSR uses to identify the reckless-endangerment enhancement under § 3C1.2. The general headings listed in the PSR refer to the applicable parts—rather than specific sections—of the guidelines. Below each heading, the PSR provides a detailed description accompanied by a citation to the specific section. For example, the PSR includes a heading for "Victim Related Adjustment"—a reference to Part 3A of the guidelines—and below that heading, it specifically cites § 3A1.2(c)(1), which authorizes the enhancement for assaulting a police officer. Similarly, the PSR uses "obstruction" terminology in a heading to refer to Part 3C of the guidelines, which is titled "Obstruction and Related Adjustments." Below the heading, the PSR specifically cites § 3C1.2—not § 3C1.1— and describes the defendant as "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." So, tracking the language of the PSR, the district court ruled on § 3C1.2 when it addressed "the adjustment for obstruction of justice" and found "that in fleeing from the police, the Defendant recklessly created a substantial risk of death, or serious bodily injury to others during that chase." The district court did not plainly err in applying that provision.

Last, Sparkman argues that the district court should have granted a three-level reduction, instead of a two-level reduction, for acceptance of responsibility under § 3E1.1. Under the guidelines, "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the offense level should be decreased by two levels. § 3E1.1(a). It should be decreased by an additional level only where several conditions are met, including where the government files a motion "stating that the defendant has assisted authorities . . . by timely notifying authorities of his intention to enter a plea of guilty." § 3E1.1(b). A third level of reduction "may only be granted upon a formal motion by the Government" unless "the Government's failure

to file a § 3E1.1(b) motion" is not "rationally related to a legitimate governmental end," *United States v. Smith*, 422 F.3d 715, 726 (8th Cir. 2005), or "the government's refusal was based on unconstitutional motive," *United States v. Jordan*, 877 F.3d 391, 394 (8th Cir. 2017).

Sparkman claims he is entitled to the third-level reduction because he "pled guilty on the Thursday before the Monday of trial." But the Government never filed a motion under § 3E1.1(b). At the sentencing hearing, the Government explained that it chose not to file because Sparkman pleaded guilty "four days before trial," after several hearings and pretrial conferences had been held and jury selection had begun. Sparkman does not argue that the government's refusal to file a § 3E1.1(b) motion was not rationally related to a legitimate governmental end or based on an unconstitutional motive. Therefore, the district court did not err by refusing to grant a third-level reduction for acceptance of responsibility.

For the foregoing reasons, we affirm Sparkman's sentence.

_____